MARK S. WERNER
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
P.O. Box 1778
Billings, Montana 59103-1778
Phone: (406) 259-2459
Fax: (406) 259-2569

 Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| UNITED STATES OF AMERICA, | Case No. 05-52-BLG-RFC |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| vs. | |
| YURI CHACHANKO, | |
| Defendant. | |

    Defendant has submitted objections to the Presentence Report. From his counsel's discussions with the Presentence Report writer, however, defendant understands that his concerns about: (1) his sentence on Counts I and II not running concurrently with his state sentence is not at issue, and (2) an upward departure based upon criminal history under-representation is not at issue. Therefore, the only objections which remain unresolved are: (1) the amount of loss allocated to Mr. Horgan in paragraph 12; and (2) the two level reckless endangerment enhancement in paragraph 31 which applies to the guideline calculation for Count I.

**The Amount Of Loss From Winner's Circle.**

Defendant basically stands on what he submitted in this regard in his objection #4. Defendant was and is not aware that there was damage to Mr. Horgan's machine(s). Defendant has seen no estimates or itemization of such damage. As to the amount of money taken, he simply does not believe that he and the co-defendant tool more than between $1400 and $2,000.

**The Reckless Endangerment Enhancement.**

1. Introduction.

Under U.S.S.G. 3C1.2 if the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, there should be a 2 level increase. Defendant doesn't believe that this short flight from the law enforcement officers which occurred between 2:00 and 2:30 a.m., created a "substantial risk" to innocent bystanders or law enforcement officer. Defendant understands that if there had been traffic on or near the Interstate Exit or bystanders in the vicinity, there could have been such a risk, but in the absence of anyone around at that time in the morning, the risk was theoretical and not substantial or actual.

2. Factual Background.

It was mentioned that this was a short pursuit and it was based upon the reports submitted by Laurel Police Department Officers Wichman and Zuhoski along with MHP Patrolman Jeremy Lee. Wichman and Zuhoski, after being notified at 2:18 a.m. of the Columbus robbery, parked their cars at the vehicle cut across or median crossing on I-90 just west of the West Laurel exit. Shortly after staging there they saw defendant driving by them east bound on the Interstate.

They promptly followed Defendant, who accelerated, and then took the West Laurel exit

off of the Interstate and proceeded on the exit route. Defendant was driving too fast to negotiate the turn off of the exit onto Highway 10. His vehicle went straight and crashed into a ditch.

Officer Zuhoski, with his sidearm drawn and shouting verbal commands, apprehended both Defendants. No firearms were found on either Defendant or in the vehicle as they had been discarded out the window of the vehicle after Defendant drove onto the west Laurel exit. The Glock .45 was found next to a fence off the right side of the exit road as it starts to straighten out. The SKS rifle was found 30 feet off the roadway in weeds, also next to the fence. Both weapons were loaded.

3. Applicable Law and Argument.

The Government bears the burden of proving factors enhancing a sentence by a preponderance of the evidence. For purposes of this enhancement the Government, at a minimum, must establish that the Defendant did more than just willfully participate in a getaway chase. Not every escape escalates into reckless endangerment. United States v. Young, 33 F.3d 31 (9th Cir. 1994); United States v. Franklin, 321 F.3d 1231 (9th Cir. 2003). While appreciating that this Court has already ruled at the co-defendant's sentencing that this enhancement applies, Defendant respectfully asserts that at substantial risk of injury or death to a bystander or law enforcement was not present as a result of this vehicle pursuit.

Several unpublished decisions by the Ninth Circuit, in which the enhancement was upheld, reflect circumstances not present here. They lend credence to the assertion that this guideline increase should not be triggered. In United States v. Guidry, 1995 WL 525545 (9th Cir. Cal.) the district court found that Guidry threw a loaded firearm out of the jeep window and over a lane of freeway traffic creating a substantial risk of death or serious bodily injury to the officers in pursuit and to the other motorists on the road. Specifically the district court found the

gun was a heavy metal object moving at a high speed and traveling across the flow of traffic. That was not the case here.

While it may be argued that the mere action of discarding a loaded weapon onto the side of the roadway creates a risk, it would have been far more dangerous were these defendants to retains their weapons while being pursued by law enforcement officers and, thereby, increase the risk of a shoot-out at the end of a chase. The danger that is inherent in the flight of an armed robber is not exacerbated when the robber rids himself of his gun, and particularly not when he throws it out a window onto a grassy area at the side of the road. See <u>Guidry</u> Dissent.

In <u>United States v. Allen</u>, 1995 Westlaw, 32961 (9th Cir. 1995), Allen drove the getaway car on a several mile high-speed chase. He ran several red-light intersections, drove onto the sidewalk, and narrowly missed several pedestrians. There was not the type of endangerment here. This occurred at a time of day where there simply were not other people around to be put at risk.

In <u>United States v. Wilson</u>, 1995 WL 74712 (9th Cir. Cal.) the getaway driver ignored the police's signals to stop, led the police in a high-speed chase, and collided with a police vehicle. That type of endangerment did not occur here.  The Government  may argue that this chase could have developed into such a situation, if it had lasted longer and carried over into further locations.  However, that's speculation and theory and  not what happened.  Defendant asserts that the Ninth Circuit ruling in <u>Young</u>--- that not every chase lends itself to this enhancement--- has to be reasonably construed as meaning: (1)  the district court must make a fact specific inquiry, (2) it must   rule on the existing facts, and (3) it must assess the risks presented by the actual circumstances, not those which are speculative.

In <u>United States v. Hernandez-Sandoval</u>, 211 F.3d 115 (9th Cir. 2000) Hernandez drove a pickup laden with marijuana into the U.S. from  Mexico on Interstate 5, in the wrong direction,

on the south bound lanes.  Responding to law enforcement presence he turned off his headlamps, crossed the median to the northbound lanes, nearly causing an accident with a northbound motorist.  Later he stopped his pickup at an intersection in town, suddenly accelerated in reverse and rammed into a patrol car before speeding away. The officer in the patrol car suffered injury requiring hospital treatment. Such was not the situation here.

In <u>United States v. Alexander</u>, 48 F.3d 1477 (9th Cir. 1994), the enhancement was affirmed because during the getaway, shots were fired and there was a risk of injury to civilians caused by the high speed chase and the defendants' violations of traffic law.  Here Defendant Chachanko certainly violated traffic laws, but at such a time and in such a location that it didn't present risk of injury to nearby civilians.  In <u>United States v. Sykes</u>, 4 F.3d 697 (8th Cir. 1993), the enhancement was affirmed because  after pursuing Sykes officers had to force him off the road to apprehend  him.  This created an obvious risk to the officer attempting this maneuver. That didn't happen here.

There is nothing in the officer reports indicating that in their actual short pursuit of Defendant's vehicle their lives were endangered.  When Defendant's car crashed and Officer Zuhoski apprehended them, Defendant has no doubt that officers Zuhoski and Wichman feared for their safety and had the reasonable, subjective belief that the Defendants would be armed—thus creating a risk to them.  However, again that wasn't the case.  The Defendants, having discarded the weapons, were not armed when the chase ended. The risk wasn't there.

Defendant, therefore, respectfully requests this Court to not apply this enhancement. There was recklessness to be sure. Fortunately there was not reckless endangerment to others.

RESPECTFULLY SUBMITTED this 17th day of May, 2006.

>/s/Mark S. Werner
>MARK S. WERNER
>Assistant Federal Defender
>Federal Defenders of Montana
>Billings Branch Office
>P.O. Box 1778
>Billings, Montana 59103
>        Counter for Defendant

Federal Defenders of Montana
P.O. Box 1778
Billings, Montana 59103-1778
(406) 259-2459

6

CERTIFICATE OF SERVICE
L.R. 5.2(b)

      I hereby certify that on May 17, 2006, a copy of the foregoing document was served on the following persons by the following means:

  __1__   CM-ECF

  _____   Hand Delivery

  __2__   Mail

  _____   Overnight Delivery Service

  _____   Fax

  _____   E-Mail

1.

CLERK, UNITED STATES DISTRICT COURT

Ed Zink
Special Assistant U.S. Attorney
United States Attorney's Office
P.O. Box 1478
Billings, MT 59103

Bruce Watters
U.S. Probation
2525 4th Ave. N., Suite 100
Billings, MT 59101

2.

Yuri Chachanko
Yellowstone County Detention Facility
3165 King Ave. E.
Billings, MT 59101

                                          /s/ Mark S. Werner
                                          FEDERAL DEFENDERS OF MONTANA